Good morning, Your Honors. My name is Walter Peel. I represent the appellant Cristian Berrelleza-Verduzco. I'm here to ask the Court to find that the guilty plea that was entered should be withdrawn, that the District Court failed to comply with the rule and statute, that the appellant suffered prejudice from the ineffective assistance of his counsel in failing to provide adequate information concerning the underlying facts of the case, the options that he had under the law and rules, and the effect of a plea of guilty. In particular... Didn't his prior counsel's affidavit basically just negate all of that? Yes. And that's what the District Court judge relied upon? Yes. And because we have de novo review, the Court is entitled to consider both that affidavit and the assertions made by... Well, if you read his affidavit and you read prior counsel's affidavit, I can understand why the District Court reached the decision that it reached. I appreciate that you understand it, but I'm not asking that you merely understand how he arrived at it. I'm asking that you disagree with the conclusion. Well, you can read that comment any way you want. Counsel, you're suggesting that we review Judge Lasnik's decision on the motion to withdraw for de novo? Well, I think what you need to do is two things. You're entitled to consider all the facts that were presented, separate from what the District Court judge did, and then determine on your own whether or not there's a sufficient body of evidence... The presumption would be that the trial court will make findings of credibility, but I think a de novo review allows you to consider that if there's substantial evidence in the record that would make that a reasonable action on your part to understand the context of the facts presented and reach a fair determination. The salient question, I think, is whether or not Mr. ... And I have trouble with his appellant. I apologize. Whether the appellant did understand, was placed in a position where he could understand, and where his trial counsel gave him sufficient information so that he can be found to have understood the issues that he was confronting. Now, it's undisputed that he's not well-educated, that he's not familiar with the legal system of the United States. There are no notes, memorandum, or other materials provided by him that he had with his client. What was discussed, what issues were resolved, and what questions were asked by... Well, but counsel, there is. There's his declaration, and he explains meeting with him and reviewing the evidence, and that his client understood that there was a very compelling case against him, the product of a really extensive investigation. This is true, and we know from experience both with appeal and trial work that it's not uncommon for counsel to say, I've reviewed the case, and that may mean simply I've read the information of the indictment, I've read the general proposition of what the facts are, I've given an outline of the case, and I've given my opinion. Didn't your client tell the district judge at the plea hearing that he understood, that his counsel had explained the plea deal to him, and that he understood it? I think more accurately, in terms of the context, what he was saying is there had been an effort at explanation, he understood there was being a plea offered, and he understood the broad terms, but he did not... I have a question from the court. You have in front of you this 14-page plea agreement. It has been translated for you and read to you, correct? Answer, yes. Yes. Okay. We're supposed to disbelieve your client now? Oh, no. What he also says separately is that he believed he was to respond yes to questions by the court, and that the... Yeah, but at some point, you know, your client has to be responsible for his answers. Well, that's true, and... He keeps telling the district court, yes, I understand, yes, I understand, yes, I understand, and now we're supposed to say, well, he was told he was supposed to answer yes to everything, whether he understood it or not. Unfortunately, that's not an uncommon situation in the criminal courts where the... Sometimes we're responsible for the answers we give, even if it's not the answer that we might have intended. That's true, but if this court were to find that that works an unjust result, then it should disregard that conclusion. What's the unjust result here? He's not allowed to have his trial. And why is that unjust? Well, in this case, because he was not properly advised of the consequence, he denies that he's guilty, and while there's compelling evidence... Well, including his confession. Well, there... That would be a good place to start, wouldn't it? It would be, yes. Counsel, his statement, his own statement was quite persuasive, right? He's denying that he's guilty? Well, yes, that's true, and the government drafted the statement that was presented to him as a requirement to accept in order to gain some benefit, so he accepted it, and he explains that he didn't understand fully what he was doing, but that he felt that he was coerced into accepting what he was presented. I just want to circle back on my question about the standard of review, because in response to Judge Bybee's questions about it's... To the effect that at some point, the trial judge has to take your client's word for it. In other words, there's this one-on-one exchange at the time of taking the plea to make sure that your client understood. And we, of course, as you indicated, have to take the trial judge's superior position to assess the credibility and really gauge whether this person understands or not. I think sometimes people do say yes in response to a judge's question, but that's why we're going to look with such deference to what the trial court judge could look and see and feel in the courtroom that on appeal, we really can't do. So it seems to me that you want to have your cake and eat it, too, on that point. Well, I do, because that gets the result that I want. That's true. Now, at the same time, there are two features that allow us to further consider whether credibility is at issue. If the conference that was held is accurately described by my client, and the coercion that runs from that is accurately described, this gives a reason why the trial court, not having inquired into that, is not fully advised of the circumstances that are affecting the appellant's responses. And it's the responses that he's using to assess credibility. Now, if the context... Your time is ticking. Forgive me for interrupting, but Judge Lasnik has told us he knew about the package deal, that it was a package deal. So in what way was your client prejudiced? What's deficient about this inquiry? There was no inquiry as to his understanding, how it affected him. The defendant? Or Judge... Yes, the defendant. Judge Lasnik had information as it related to co-defendants and their individual concerns, but not as to my client. Well, in his declaration that he filed in support of the motion to vacate his plea or to withdraw his plea, in Mr. Verduzco's declaration, he doesn't say anything about his co-defendants coercing him or pressuring him to enter into that plea agreement as a package deal. And that is traditionally the concern that is oftentimes foremost in the mind of the trial court, whether or not others have put pressure on him. What other concern are you... What's missing here? If that wasn't a factor, what's missing? Well, his individual right to assert his privilege and his right to go to trial, which he feels was taken away by the influence of the judge who was conducting the conference. Okay, so your client learned about this type of settlement conference in prison, requested the settlement conference, insisted upon a settlement conference, and so I'm having a really hard time and I just want to give you a fair chance to respond, but you're telling me that his right to trial was taken away and it seems to me that he was really insistent upon this very procedure that was afforded to him. According to his trial lawyer, but not according to Mr. Verdusco, he says that this was brought to him by his trial lawyer and that he didn't know about that option and he didn't understand what the procedure was, which would make sense because it was certainly in flux whether it was available and whether it was a proper exercise of judicial action. But the statement that the appellant makes is that it was brought to him by his trial lawyer. His trial lawyer insisted on his taking the deal and that had he not had that insistence and the assurance from the judge who was conducting the hearing, he would not have done it. How many years did your client get? About 35 years. Okay, and if he had gone to trial, what would his exposure have been? Substantially more. Forty-five, I think. Yeah. If he was convicted. That's right. Just one more question, if I could. I think the mandatory minimum, if he had been convicted on all counts, would have been 45 years, right? I believe that's correct. Right. I'll accept it as correct. I'd have to recalculate. A lot of jail time. He was facing a lot of jail time. So just one final thing. It seems to me that your client is not, under sort of the CARO analysis, never mentioned feeling pressured by the judge who performed the settlement conference. Is that right? He did in his motion to withdraw the plea. He didn't when he was, I'm sorry? He did in his motion to withdraw his plea. He did not at the time the plea was entered. No, I'm talking about after the fact. After the fact, does he say that he was pressured by the trial court judge? No. Forgive me, by the settlement judge? Well, he makes reference to both the district court judge, I think more obliquely, but he means by that is the judge who conducted the hearing. That his assurance that he... The plea. Taking the plea, but I'm talking about the settlement conference. No, no. Settlement conference judge. The suggestion is made by the appellant that the settlement conference judge gave assurance of a, quote, fair sentence, which he interpreted in light of the sentence that he thought was fair, and that that is part of the coercion that he felt in accepting the plea. It's also strong support for Judge Lasnik's conclusion that this person was expressing remorse because he was facing a whole lot of jail time. He was offered significant reduction in that jail time at the settlement conference. He wound up getting a lot of jail time. That's true, but I think the significant thing that's discussed in the role in the case law is that when the motion to withdraw is made before sentencing, there is less consideration to be given to the idea of regret and remorse, which was done in this case. He did not want to go forward to sentencing. He wanted to have a new trial, so he had not yet been sentenced when he first made his claim for a new trial. Yes, a year had passed, right? About a year had passed. It was about three days prior to the sentencing hearing. Yes, I understand. Thank you for your answer. The counsel was appointed and the decision was made. I understand. Thank you. Okay. Thank you, counsel. Thank you. Your Honors, Charlene Kosky for the United States. Counsel, what's the appropriate standard of review? Abuse of discretion. It's abuse of discretion. And as to any factual findings that the district court made, it's? Clear error. Clear error, and if we were to conclude that those factual findings were not supported by the evidence, then it would be an abuse of discretion. Or if the district court judge made a legal error, that would be an abuse. But there seems to be ample evidence here that Judge Lasnik relied on. I would agree, Your Honor. Did the defendant ever complain that the judge who conducted the settlement conference unfairly pressured him? No. The only complaint made regarding Judge Martinez is in this brief before this court. And I actually have exactly what Mr. Barilisa Varduzco said to Judge Lasnik, who's the trial judge, at the hearing where Mr. Lasnik was inquiring as to why he wanted to withdraw his plea. And Mr. Barilisa Varduzco said, and I don't know if you remember when you told me, Mr. Barilisa, don't worry about it, I'm going to give you a fair time. I wasn't going to sign, but after the whole day's pressure in your words, those words were what made me make the decision. Judge Lasnik then went back and reviewed the transcript from the colloquy and noted that he did say that he would give, that he would be fair in sentencing, but he made that comment after Mr. Barilisa Varduzco had already entered his plea. And he does make a note of that in his order. And those were Judge Lasnik's words? Yes. Yes. Up until then, there was no allegation that there had been any pressure applied by Judge Martinez in the settlement conference, which was I thought his only comment about pressure, the pressure that he felt was that he had to make a decision that day. That's true. That is true. He felt the timing of it was coercive and that The government wasn't going to hold the offer open if it went over It expired. That's correct. That's correct. And he wanted to He felt pressure to take the offer. He felt pressure to take the offer is what he said. He said that he didn't. He felt pressure to keep his brother out of going to trial. His younger brother. Right. Yes. But we're always concerned about these package deals and about the concern. I mean, you think very understandably. Sure. And of course, two of these folks were his siblings. And so what about that? He wasn't wrong, right? The deal was that if he had rejected this deal, would either of his brothers been allowed to accept it? Right. So no, that was the understanding. That was the condition of the package plea. And why shouldn't we be concerned about the nature of the deal exerting pressure on any one of these defendants? Well, this court has noticed that there that is a concern. But there there needs to be some kind of indication that there's been the concern is that the defendant who stands to gain the most will pressure the co-defendants who stand to gain the least. In this case, first of all, there's no indication that that kind of pressure was applied. And second of all, Mr. Baralisa-Varduzco stood to gain the most. So he actually he was sentenced to 27 years. The government probation recommended 30. And he did face a mandatory minimum of 45 years if he'd gone to trial and lost. So he did have the confession and they also had the wiretap recordings of his conversations on his phone, which the court had denied a motion to disperse to suppress on those. So he it was a good deal for Mr. Baralisa-Varduzco. But not the deal he was looking for. It seems to me that all along he was looking for 10 years. Well, I mean, that was his hope pre-settlement conference. Wasn't that what he was holding out for? According to Mr. Hernandez, his attorney's declaration in the year leading up to this, there were multiple discussions about potential plea agreements. And Mr. Baralisa-Varduzco always wanted 10. And the government always said that is not an option. The mandatory minimum is 15. We're not even going to discuss 10. And it was Mr. Hernandez who then came back and said, well, what if we talk about this this type of range? We get a little closer. We know we're going to go over 15. During the settlement conference, that was clear throughout the entire settlement conference. It was also clear at every single juncture in the year leading up to it. Every single time plea negotiations came up and the government said, no, 10 is not going to happen. There was also a court certified translator that participated in the settlement conversation, in the settlement discussion. So any suggestion that he didn't understand that it was happening, that was at the heart of the negotiations. Whether he would be allowed to argue for 15 and the government could go as life, or whether there was going to be a higher than 15 floor and the government would then argue for a lower than life sentence. He opted to be able to argue for 15. That was the heart of the negotiation. But just to be able to argue for it. Yes. Right. So could you tell me just quickly, at what junctures was there a interpreter and when was there not an interpreter? And I understand defense counsel, Mr. Hernandez was a Spanish speaker, but. Correct. So during Mr. Hernandez's meetings with his client, they spoke Spanish and did not use a translator. At the settlement conference, there was a court certified translator. And then prior to going into the plea colloquy, the entire plea agreement was read to him by a court certified translator. And so there was that. And then there was, of course, Mr. Hernandez who participated, who spoke Spanish, but was not a court certified translator. Okay. I think there were 33 defendants. I believe it was 34 after the 33 co-defendants, I should say, and four participated in the settlement conference on this day. Actually, I think three participated in the conference. Ivan didn't actually participate in the conference, was part of the agreement. Okay. And so when we talk about this being an interdependent, there was an interdependence clause that pertained just to that subset. Correct. Thank you. If there are no further questions, we ask that you affirm. Thank you. Thank you, Counselor. I think we've heard everything. Matter submitted.
judges: Paez, Bybee, Christen